SO ORDERED: November 09, 2011.



_____
Anthony J. Metz III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CHRISTOPHER PAUL WHITE, | ) | |
| | ) | CASE NO. 09-10289-AJM-7 |
| Debtor. | ) | |
| _____ | ) | |
| THE NATIONAL BANK OF INDIANAPOLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 09-50511 |
| | ) | |
| CHRISTOPHER PAUL WHITE, | ) | |
| | ) | |
| Defendant. | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER
ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Background

Plaintiff, The National Bank of Indianapolis ("NBI") filed a nondischargeability

complaint against debtor Christopher Paul White ("White") under, *inter alia*, 11 U.S.C.

§ 523(a)(2)(A) for damages arising out of a check delivered by White (the "Check") which was returned for insufficient funds.  In response, White asserted various affirmative defenses and a counterclaim.  This Court, in its *Findings of Fact, Conclusions of Law, and Order on Plaintiff's Motion for Summary Judgment*, dated December 23, 2010[1] (the "Order"), held that White was collaterally estopped from relitigating the nondischargeability of the state court judgment ("State Court Judgment"), previously rendered in favor of NBI and against White, because at least one of the counts underlying the State Court Judgment determined the issue of fraud for purposes of § 523(a)(2)(A). [Order, ¶ 24, p. 14].  This Court further held that White was collaterally estopped from relitigating the defenses and counterclaims which were necessarily adjudicated as part of the State Court Judgment. [Order, ¶ 25, pp. 14-15].  However, this Court determined that White was not collaterally estopped from relitigating the amount of the nondischargeability judgment. [Order, ¶ 26, pp. 15-16].

Subsequent to the entry of the Order, NBI amended its complaint, wherein it reduced its claim to except debt from discharge to $382,486.17, the amount of its actual damages.  Thereafter, NBI moved for summary judgment on the entirety of its Amended Complaint and all of White's remaining counterclaims.  In response, White filed a Counter-Motion for Summary Judgment ("Counter-Motion"), wherein he argued the amount of the nondischargeability judgment should be zero.

---

[1] Published at *Nat'l Bank v. White (In re White)*, 444 B.R. 887 (Bankr. S.D. Ind. 2010).

**Findings of Fact**

The facts relevant to NBI's motion, to which there is no genuine dispute, are as follows:

1.  White was the sole shareholder, president and secretary of Reffco II, Inc., which, in turn was the general partner of Reffco II LP ("Reffco LP"). [Order, ¶ 1, p. 2].

2.  Reffco LP maintained a checking account at NBI (the "Account") for which White was the sole authorized signatory. Both White and Reffco LP were joint and severally liable for deficiencies in the Account resulting from overdrafts, as well as costs incurred by NBI to collect any deficiency. [Order, ¶ 2, p. 2].

3.  On January 30, 2008, White deposited into the Account the Check made payable to Premier Properties USA, Inc. ("Premier") in the amount of $500,000, which had been drawn on the account of HPT, LLC ("HPT"). NBI honored the Check and credited the Account for its amount. Unfortunately for both NBI and White, the Check was presented for payment and dishonored down the line for insufficient funds. By that point, NBI had honored other checks drawn on the Account, which resulted in an overdraft to the Account amounting to $382,486.17. [Order, ¶ 3, p. 2].

4.  The remaining Findings of Fact contained in the Order are hereby incorporated by reference as if fully set forth within these Findings of Fact.

5.  The specific events causing the overdraft of the Account are as follows: (i) NBI received a reverse wire request ("Payroll Request") from the payroll company for Premier [Counter-Motion, Exhibit A, p. 26]; (ii) because Premier did not have enough funds to cover the Payroll Request, NBI contacted White, who informed NBI he "would make a deposit later on that day to cover those funds." [*Id.* at 29]; (iii) in reliance on this statement, NBI advanced the

3

funds for the Payroll Request. [*Id.* at 30]; (iv) later on that same day, White deposited the Check into the Account and NBI credited funds therefrom to the Premier account in the amount which had been advanced for the Payroll Request. [*Id.* at 37]; (v) when the Check was subsequently returned for insufficient funds, it caused the Account to become overdrawn in the amount of $382,486.17. [Order, ¶ 3, p. 2].

6. NBI advanced the funds to cover the Payroll Request, as opposed to simply transferring funds from the Account into the Premier account, because the Account also had insufficient funds to cover the Payroll Request. [Counter-Motion, Exhibit A, p. 29; Reffco Statement of Account, attached as Exhibit 3 to Affidavit of George Keely].

7. After the Check was returned for insufficient funds, NBI proceeded to close other accounts on which White was a signator. [Supplemental Affidavit of George Keely "Keely Supp. Aff.", ¶ 23]. NBI closed these accounts because it could not risk other fraudulent checks being presented. [*Id.*].

8. The funds from the closed accounts, in the collective sum of $124,668.81, were returned to the various entities, in care of White. [*Id.* at ¶ 24]. White did not use any of these funds to pay down the deficiency balance existing in the Account as a result of the Check. [*Id.*].

9. NBI also applied the proceeds from certain collateral to the personal indebtedness of White secured thereby. Specifically, White's personal line of credit ("PLOC") had matured on January 2, 2008. Although discussions had occurred regarding the renewal of same, no renewal of the PLOC had occurred as of the date White fraudulently presented the Check. [*Id.* at ¶¶ 8-11, Exs. 7-9].

10. The PLOC was secured by two certificates of deposit (the "CDs"), in the combined sum of $12,000,000. [*Id.* at ¶¶ 2-15, Exs. 1-13]. After White's presentment of the Check, NBI declined to renew the PLOC. Accordingly, the CDs were setoff against the indebtedness owing under the PLOC. [Keely Supp. Aff., ¶¶11, 16].

11. The CDs which were setoff against the indebtedness owing under the PLOC were renewals and/or replacements of the original CDs White pledged as collateral securing this indebtedness. [*Id.* at ¶ 16, Exs. 1-6, 10-13].

12. Prior to NBI's application of the CDs to the matured indebtedness owing under the PLOC, an interest payment from White's checking account, in the amount of $34,000, was made on February 5, 2008, pursuant to the authority granted to NBI by White in an Automatic Transfer Authorization. [*Id.* at ¶18, Ex. 14].

13. After NBI applied the collateral securing White's indebtedness under the PLOC, a deficiency balance in the amount of $146,915.72 remained. [*Id.* at ¶ 16]. No part of this deficiency balance was ever repaid by White. [*Id.*].

14. After NBI obtained the State Court Judgment, NBI applied the proceeds generated from the sale of White's personal property to the indebtedness owing under White's Home Equity Line of Credit ("HELOC"). [*Id.* at 21].

15. White failed to timely make the HELOC payment which was due and owing on January 15, 2008, thus causing the HELOC to go into default. [*Id.* at ¶ 20].

16. After the proceeds from the sale of White's personal property were applied to the indebtedness owing under his HELOC, a deficiency balance in the amount of $324,149.53 remained. No part of this deficiency balance was ever repaid by White. [*Id.* at ¶ 21].

5

## Conclusions of Law

### *Summary Judgment Standard*

1.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L. Ed.2d 265 (1986). The moving party bears the burden of showing that no genuine issue of material fact is disputed, but once the moving party has met this burden, the nonmoving party must set forth specific facts demonstrating a disputed material fact for trial and cannot merely rely on denials in its pleadings. If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment will be entered against it. *Celotex*, 477 U.S. at 322.

2.  NBI alleges the amount of White's indebtedness to NBI which should be held nondischargeable under §523(a)(2)(A), is its actual damages in the amount of $382,486.17. Conversely, White alleges the amount of his nondischargeable debt to NBI should be zero.

### *Causation Has Already Been Established*

3.  White first argues that his deposit of the Check was not the proximate cause of NBI's damages. However, a determination that the fraud at issue actually caused the damages upon which a nondischargeability judgment is based is a required element in order to hold a debt

nondischargeable under §523(a)(2)(A). Accordingly, this Court's Order has already established that White's deposit of the Check caused NBI to incur damages.

    4.    Specifically, the Order provides, in pertinent part, that:

> NBI is proceeding on the "actual fraud" portion of §523(a)(2)(A). To prove nondischargeability under §523(a)(2)(A) for "actual fraud", the creditor must prove by a preponderance of the evidence: (1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) **the fraud created the debt that is the subject of the discharge dispute** . . .

[Order, ¶ 22, p. 13] (emphasis supplied). This third element, that "the fraud created the debt that is the subject of the discharge dispute" clearly describes the element of causation.

    5.    The Order further provides:

> [I]t is the property that White obtained (credit to the Account) through this fraud that is the subject of this dispute. The check fraud statute meets the criteria of what is required to prove "actual fraud" under §523(a)(2)(A) and therefore the State Court Judgment with respect to check fraud collaterally estops White from relitigating the issue of nondischargeability under Count I of NBI's complaint.

[Order, ¶ 24, p. 14].

    6.    The Order tracks the requirements for §523(a)(2)(A) under applicable law. *See McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir. 2000); *In re Hanson*, 428 B.R. 475, 487 (Bankr. N.D. Ill. 2010) (holding that to prove actual fraud, the creditor must prove by a preponderance of the evidence, *inter alia*, the fraud created the debt that is the subject of the discharge dispute.).

    7.    The third element for proving actual fraud under §523(a)(2)(A) requires a showing of causation. Specifically, that "the fraud created the debt that is the subject of the discharge." Because this element of proof has already been established, White is precluded from

relitigating the issue of whether his fraudulent presentment of the Check caused the debt that is the subject of the discharge.

8.   None of the cases cited by White deal with check fraud, nor do any of these cases stand for the proposition that a second proximate cause analysis must be conducted in order to determine the amount of damages, once a determination is made that the debtor's fraud caused damages to be incurred. Accordingly, the Court finds the authority relied upon by White to be misplaced.

### *White is Estopped From Raising the Issue of Causation*

9.   White is additionally estopped from arguing causation because this argument was both raised and rejected in the state court litigation. The Order provides that any affirmative defenses raised by White in the initial state court proceedings are barred from being raised in the current proceedings as counterclaims. Specifically, the Order provides that

> White raised affirmative defenses with respect to his fraud liability which the State Court necessarily had to have considered and rejected in order to enter the State Court Judgment. **To the extent the counts in the counterclaim filed in this adversary proceeding mirror these affirmative defenses, White is collaterally estopped from raising those counts here for the same reason he is collaterally estopped from relitigating the issue of nondischargeability.**

[Order, ¶ 25, pp. 14-15] (emphasis supplied).

10.   White's *Answer to Complaint, and Affirmative Defenses,* filed in the state court action, set forth the following affirmative defenses:

> 3.   Plaintiff caused its own alleged damages by failing to cover the Check with funds that Plaintiff held or would hold for that purpose.
>
> 4.   Plaintiff caused its own alleged damages by failing to follow the agreement between Plaintiff and Defendant to cover the Check.

8

>    5.   Plaintiff caused its own alleged damages by failing to follow the established course of conduct between Plaintiff and Defendant to cover the Check.

[Docket Entry 30-2, p. 9]. These affirmative defenses raise the very same causation arguments advanced in White's Counter-Motion. As such, White is collaterally estopped from asserting these arguments.

### *White is Additionally Estopped from Denying Personal Liability*

11.   White is also collaterally estopped from arguing that I.C. § 26-1-3.1-402 shields him from civil liability for his criminal conduct in presenting the Check. This argument clearly addresses the issue of liability. Accordingly, White is precluded from relitigating his personal liability because this issue was necessarily adjudicated as part of the State Court Judgment. [Order, ¶ 15, p. 10].

### *White's Causation Argument Is Belied By The Undisputed Facts*

12.   The undisputed testimony of NBI's employee, Joan Muehl ("Muehl"), establishes the following chain of causation: (i) NBI received the Payroll Request. [Counter-Motion, Exhibit A, p. 26]; (ii) Because the Premier account had insufficient funds to cover the Payroll Request, Muehl contacted White, who informed her he "would make a deposit later on that day to cover those funds." [*Id*. at 29]; (iii) in reliance on this statement, NBI advanced the funds needed to cover the Payroll Request. [*Id*. at 30]; (iv) later on that same day, White deposited the Check into the Account, and NBI credited funds to the Premier account in the amount of funds advanced to cover the Payroll Request. [*Id*. at 37].

13.   Despite White's contentions to the contrary, the undisputed facts establish that NBI did not transfer funds from the Account into the Premier account in order to cover the Payroll Request, as there were not sufficient funds in the Account to cover same. Instead, NBI

9

provided a provisional credit based upon White's assurances that good funds, in the form of the Check, would be shortly deposited. When the Check was subsequently dishonored, it resulted in the Account deficiency in the sum of $382,486.17.

14.     White's timing argument provides him with no safe haven, as it is irrelevant when NBI actually advanced the funds. It makes no difference whether NBI advanced the funds prior to the deposit of the Check, based on assurances the Check would be deposited in time to cover the advanced funds, or NBI advanced the funds subsequent to the Check's deposit. In either case, White represented to NBI there were good funds standing behind the Check. As noted in the Order, it is the credit given by a bank based on its reliance on the depositor's assurances of good funds, which is the property fraudulently obtained. [Order, ¶ 24, p. 14].

### *White Lacks Standing to Bring His Wrongful Setoff Claims*

15.     White is precluded from arguing setoff as he lacks standing to assert these arguments. Any cause of action accruing to a Chapter 7 debtor prior to the filing of his bankruptcy petition becomes property of the estate, and therefore, may only be pursued by the trustee. *See e.g. Stone v. Stenz*, 2008 U.S. Dist. LEXIS 119235 at *3-*5 (S.D. Ind. May 21, 2008) (holding that, when petitioner "filed his Bankruptcy petition, all of his 'legal and equitable interests . . . in property' as of the filing of the bankruptcy case became the property of the bankruptcy estate. . . . Claims that arise before a debtor files bankruptcy follow the estate . . . . The bankruptcy trustee, as representative of the estate, has the exclusive power to prosecute or defend them.") (citing 11 U.S.C. § 541(a)(1); *Mele v. First Colony Life Ins. Co.*, 127 B. R. 82, 84 n.9 (D.D.C. 1991); *In re Witko*, 374 F.3d 1040,1042 (11th Cir. 2004); *In re Polis*, 217 F.3d 899, 901-02 (7th Cir. 2000); *Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006); *Cable v.*

*Ivy Tech State Coll.*, 200 F.3d 467, 472 (7th Cir. 1999); *In re New Era, Inc.*, 135 F.3d 1206, 1209 (7th Cir. 1998)).

16. Although the trustee may abandon certain causes of action, thus allowing prosecution of such claims by the debtor following discharge, this is not the case when the cause of action has not been included in the debtor's schedules. *See Davis v. Avco Fin. (In re Davis)*, 158 B.R. 1000, 1002 (Bankr. N.D. Ind. 1993). In *Davis*, the court granted the defendant's motion to dismiss plaintiff/debtor's claim for violation of the Fair Debt Collection Practices Act because the debtor/plaintiff lacked standing to prosecute the claim. *Id.* The court specifically held:

> After notice and a hearing, property may be abandoned from the estate by the trustee or upon request of a party in interest. 11 U.S.C. §§ 554(a) and (b). However, in this case the Debtors' cause of action was never abandoned from the estate under either §§ 554(a) or (b).
>
> Any scheduled property not administered at the time of the closing of the case is abandoned to the debtor and deemed administered. 11 U.S.C. § 554(c). **This section explicitly provides that it applies only to property that has been scheduled, and it is not enough that the trustee learns of property through other means**. . . Since Debtors' cause of action was not scheduled, §554(c) is not applicable and the cause of action was not deemed administered and abandoned.
>
> Property of the estate that has not been expressly abandoned or administered by the trustee at the time the case is closed remains property of the estate. 11 U.S.C. § 554(d) . . . **Consequently, the cause of action was initially property of the estate, and remained property of the estate even though the case was closed.**

*Id.* (internal case citations omitted) (emphasis added). *See also West v. H&R Block Tax Servs.*, 2003 U.S. Dist. LEXIS 22778 at *9-*10 (N.D. Ill. Dec. 15, 2003) ("[h]aving determined that [debtor]'s claims of discrimination against [defendant] are property of his bankruptcy estate, it is

11

clear that he lacks standing to bring the present cause of action. This is because in Chapter 7 bankruptcies such as [the debtor]'s only the trustee has standing to prosecute or defend a claim belonging to the estate.") (internal citations omitted); *Gulley v. Winnebago County Forest Preserve District*, 1992 U.S. Dist. LEXIS 11639 (N.D. Ill. May 7, 1992) (holding that debtor/plaintiff lacked standing to prosecute his employment discrimination case because the facts giving rise to the cause of action occurred prior to the filing of the petition and there was no evidence that the claim had been scheduled and abandoned by the trustee); *Cable v. Ivy Tech State College*, 200 F.3d 467, 472 (7th Cir. 1999) ("In liquidation proceedings, only the trustee has standing to prosecute or defend a claim belonging to the estate."); *In re New Era, Inc.*, 135 F.3d 1206, 1209 (7th Cir. 1998) ("When a debtor has a trustee in bankruptcy . . . the trustee has, with immaterial exceptions, . . . the exclusive right to represent the debtor in court.").

17. White cannot use claims belonging to the Trustee to avoid a nondischargeable judgment. The undisputed facts establish that: (i) White's alleged cause of action accrued prior to his bankruptcy petition; (ii) White did not schedule any potential cause of action against NBI in his bankruptcy petition;[2] (iii) therefore, White's alleged cause of action was not abandoned by the Trustee; (iv) thus, White lacks standing to assert any claim for wrongful setoff against NBI because such standing remains exclusively with the Trustee even after White's discharge.

---

[2] See Schedule B of White's Bankruptcy Petition. [Docket Entry 1, p. 9]. Under line 21, entitled "*Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each*." White lists only "Possible Fraud Claim against Hagop (Jack) S. Garabedian" in the amount of $2,500,000.00." No claims against NBI or any other entity are listed.

*NBI's Setoff Actions Were Proper*

18.     White's claim of wrongful execution is unfounded.  The undisputed facts establish that a valid judgment was entered against White, which he did not appeal.  Execution upon the assets of a judgment defendant is expressly authorized by Indiana statute.  *See* I.C. §34-55-1-1, *et seq*.  As such, there is no question that NBI's execution against the personal property of White was both undertaken pursuant to and expressly authorized by Indiana law.

19.     NBI applied the proceeds generated by the sale of White's personal property to the indebtedness owing under his HELOC [Keely Supp. Aff., ¶ 21], which was the bank's prerogative.  *See Templeton v. Sam Klain & Son, Inc.*, 425 N.E.2d 90, 92 (Ind. 1981) (holding that when more than one debt is due the creditor is free to apply payment to whatever debt it chooses, absent prepayment instructions from debtor).

20.     With respect to the PLOC, the designated evidence establishes the line of credit had matured and NBI properly set off against the CDs pledged as collateral. [Keely Supp. Aff., ¶¶11, 16].  White's argument that NBI had agreed to renew the PLOC is precluded by Indiana's Lender Liability Statute, I.C. § 26-2-9-4, which provides, in pertinent part, that:

(a)     A debtor may assert:

   (1)     a claim for legal or equitable relief; or
   (2)     **a defense to a claim**;

arising from a credit agreement only if the credit agreement at issue satisfies the requirements set forth in subsection (b).

(b)     A debtor may assert a claim **or defense** under subsection (a) **only if the credit agreement at issue**:

> (1) **is in writing**;
> (2) **sets forth all material terms and conditions** of the credit agreement, including the loan amount, rate of interest, duration, and security; and
> (3) **is signed by the creditor and the debtor**.

(emphasis added). It remains undisputed there was no written agreement to renew White's PLOC beyond its maturation on January 2, 2008. Accordingly, any claims or defenses by White based on alleged oral agreements are unavailing under the express terms of I.C. § 26-2-9-4.

21. White is also not entitled to any setoff with respect to his personal checking account, as these funds were properly applied by NBI to the outstanding interest owing on the PLOC. Specifically, prior to NBI's application of the CDs to the matured indebtedness owing under the PLOC, an interest payment in the amount of $34,000 was made on February 5, 2008. [Keely Supp. Aff., ¶18]. NBI made the interest payment, pursuant to the authority granted to it by White in the Automatic Transfer Authorization, which authorized NBI to charge White's personal checking account for all payments due under his PLOC. [*Id.*, ¶18, Ex. 14]. Accordingly, because this transaction was authorized by White, he is not entitled to a setoff for same.

### *Defenses to General Claims Cannot Be Utilized to Reduce Nondischargeable Judgments*

22. White cannot use defenses which may be available (to the Trustee) to reduce the amount of the claim filed by NBI in the bankruptcy estate, as a defense to the nondischargeability judgment. *See Welch v. Laraway*, 2010 Bankr. LEXIS 3041 at *30 n. 23 (Bankr. D. Idaho Sep. 13, 2010) (holding that setoff did not apply where the "transactions at

issue here would be 'separate' because the . . . claim alluded to by [debtor] is a contract liability, while his debt to the [holders of the § 523(a)(2)(A) judgment] sounds in fraud.").

23. White's checking account and the CDs secured his payment obligations under his PLOC. After NBI applied the collateral to this matured obligation, there remained a deficiency balance in the amount of $146,915.72, which was subsequently discharged in White's bankruptcy proceedings. [Keely Supp. Aff., ¶ 16]. The same holds true for the debt White owed NBI under his HELOC, wherein NBI was left with a deficiency balance of $324,149.53. [*Id.*, ¶ 21]. Even if White could demonstrate that NBI's actions with respect to these accounts was somehow wrongful, the only result would be a reduction in the amount of NBI's claim which has already been discharged. Simply put, White cannot utilize a defense to the gross amount of NBI's discharged claim to offset the amount of the damages incurred by NBI as a result of White's fraud.

### *White is Entitled to a Credit*

24. White alleged in his deposition that a $4,000.00 refund to the Account was not properly credited to him. [Deposition of Christopher Paul White, Docket Entry 108, Exhibit B, p. 13, lns 14-21]. At the summary judgment hearing, counsel for NBI did not oppose giving White a credit for this amount.

25. The credit White is entitled to receive, in the amount of $4,000.00, reduces NBI's actual damages to the sum of $378,486.17.

### Order

26. Any Finding of Fact shall be treated as a Conclusion of Law, and any Conclusion of Law shall be treated as a Finding of Fact, in order to support the rulings of this Court.

27. There is no genuine issue of material fact, and NBI is entitled to judgment as a matter of law.

28. NBI is entitled to a judgment against White in the amount $378,486.17.

29. NBI is further entitled to a determination that its judgment against White is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

30. NBI's *Motion for Summary Judgment on Entirety of Amended Complaint and as to Any Remaining Claims from Counter Complaint*, be and hereby is GRANTED.

31. White's *Counter-Motion for Summary Judgment,* be and hereby is DENIED.

32. The Court will issue a Judgment consistent with these Findings of Fact and Conclusions of Law contemporaneously herewith, pursuant to Fed. R. Bankr. P. 7058.

###